```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF TEXAS
                         HOUSTON DIVISION
```

| | | |
|---|---|---|
| DEBRA SWANSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-213 |
| | § | |
| HEARST CORPORATION LONG TERM | § | |
| DISABILITY PLAN, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM AND ORDER

Pending are Defendant Hearst Corporation Long Term Disability Plan's Motion for Summary Judgment (Document No. 13) and Objections to Plaintiff's Expert Disclosures and Supplement to Plaintiff's Expert Report and Motion to Strike (Document No. 24). After having considered the motions, responses, replies, and the applicable law, the Court concludes that the summary judgment should be granted for the reasons that follow.

I. Background

Debra Swanson ("Plaintiff") brings this ERISA action against the Hearst Corporation Long Term Disability Plan ("Defendant") to recover benefits claimed under a long-term disability benefits policy (the "Policy")[1] underwritten and administered by Hartford

---

[1] Document No. 14, ex. 1A (Policy).

Life Insurance Company ("Hartford"). Document No. 1. Plaintiff is covered under the Policy by virtue of her employment by The Houston Chronicle, a division of Hearst Corporation. The facts pertinent to Defendant's summary judgment motion are not in dispute. Plaintiff filed her claim for long-term disability under the Policy in November 2001, which Hartford approved and began paying in January 2002.[2] Payments continued for more than a year until Hartford, in an April 4, 2003 letter, notified Plaintiff that her claim was being terminated because she was cleared to return to work on a full-time basis.[3] Hartford's April 4th letter explained the nature of and process for appealing the decision:

> [ERISA] gives you the right to appeal our decision and receive a full and fair review. You may appeal our decision even if you do not have new information to send us. You are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to your claim. If you do not agree with our denial, in whole or in part, and you wish to appeal our decision, you or your authorized representative must write to us within one hundred eighty (180) days from your receipt of this letter. Your letter should be signed, dated and clearly state your position. Along with your appeal letter, you may submit written comments, documents, records and other information related to your claim.
>
> Once we receive your appeal, we will again review your entire claim, including any information previously submitted and any additional information received with your appeal. Upon completion of this review, we will

---

[2] Document No. 14, ex. 1C.

[3] Id., ex. 1C.

>   advise you of our determination.  After your appeal, and
>   if we again deny your claim, you then have the right to
>   bring a civil action under Section 502(a) of ERISA.[4]

Hartford correctly advised Plaintiff of the Policy's appeal provisions, namely, that Plaintiff may:

>   1.   request a review upon written application within
>        180 days of the claimed denial;
>
>   2.   request copies of all documents, records, and other
>        information relevant to your claim; and
>
>   3.   submit written comments, documents, records, and
>        other information relating to your claim.[5]

More than four months passed before Plaintiff replied by letter dated August 25, 2003, in relevant part as follows:

>   Please accept this letter of Debra Swanson's intention to
>   appeal your decision terminating her benefits under the
>   above referenced policy.  Once we have had adequate time
>   to review and supplement the record, we will notify you
>   in writing to proceed with Debra Swanson's administrative
>   appeal under the terms of the Plan.[6]

In addition, Plaintiff's counsel in this August 25, 2003 letter requested numerous documents and materials, set out below at pages 9-10, pertinent to a review of Defendant's denial of disability benefits.

---

[4] Id., ex. 1D, ex. 1A (Policy) at AR800.

[5] Id., ex. 1A (Policy) at AR800.

[6] Id., ex. 1E.

Hartford received the letter on September 2, 2003, and recorded in Plaintiff's file its receipt, which states an "intention to appeal our decision" and requesting "file copy, policy booklet, etc."[7] On September 12, 2003, Hartford's agent entered the following in Plaintiff's file: "Intent to appeal letter rec'd. not an appeal - will send out acknow. letter," and sent the file to be copied for Plaintiff's attorney.[8] The file was copied and sent to Plaintiff's attorney on September 25, 2003, fewer than thirty days after Hartford had received the request. When no appeal was received after expiration of the 180 day appeal period, Hartford entered in Plaintiff's file: "SENDING TO CLOSE. NO APPEAL RECEIVED."[9]

More than three years later, Plaintiff's counsel sent a letter dated February 23, 2007, to Hartford's appeals unit, asserting that Plaintiff's counsel had by letter of August 25, 2003, "initiated an appeal" and notified Hartford that "Ms. Swanson would further supplement her appeal."[10] The eight-page letter then argues why the decision made in 2003 should now be reversed in 2007, setting forth a "preliminary statement" and a three-part argument demanding that Hartford adhere to the Policy provisions on Plaintiff's appeal,

---

[7] Id., ex. 1B.

[8] Id., ex. 1B.

[9] Id., ex. 1B.

[10] Id., ex. 1F.

requesting that Hartford provide all supplementation of the administrative record, and concluding with argument that Plaintiff is entitled to benefits immediately and retroactively "from the date he [sic] filed his [sic] application for STD and LTD benefits under the Plan."[11]

Hartford received Plaintiff's appeal letter on March 5, 2007, and replied that it could not consider Plaintiff's appeal because "it was not submitted within the 180 day appeal period specified by the policy."[12]

Defendant moves for summary judgment to dismiss Plaintiff's case because (1) Plaintiff failed to exhaust her administrative remedies by not appealing within 180 days; and (2) the statute of limitations has run on Plaintiff's claim.

## II. Standards of Review

Rule 56(c) provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

---

[11] Id., ex. 1F.

[12] Id., ex. 1G.

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. Id. "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id.

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing Matsushita, 106 S. Ct. at 1351). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary

judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

### III.   Discussion

A.   Exhaustion

Section 502(a)(1)(B) of ERISA authorizes a participant to bring a claim for recovery of benefits to which the participant is entitled under the terms of a plan, to enforce rights under a plan, or to clarify rights to future benefits under a plan. 29 U.S.C. § 1132(a)(1)(B). "[C]laimants seeking benefits from an ERISA plan must first exhaust available administrative remedies under the plan before bringing suit to recover benefits." Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corps., 215 F.3d 475, 479 (5th Cir. 2000). "The policies behind the exhaustion requirement include upholding Congress's desire that ERISA trustees and not the federal courts be responsible for the actions of plan administrators, providing a clear record of administrative action if litigation ensues, and allowing judicial review of fiduciary action or inaction under the abuse of discretion standard, where applicable, rather than *de novo*." Bourgeois, 215 F.3d at 479 n.4.

Defendant contends that Plaintiff did not exhaust her administrative remedies because she did not appeal within 180 days of Hartford's April 4, 2003 initial decision to deny her benefits. According to Defendant, Plaintiff appealed on February 23, 2007,

when Plaintiff sent the letter outlining her position and arguments.  Relying on Holmes v. Proctor & Gamble Disability Benefit Plan, Defendant argues that Plaintiff's August 25, 2003 letter did not constitute *an appeal* because it expressed only an *intent to appeal* sometime in the future.  228 F. App'x 377 (5th Cir. 2007).

In Holmes, the district court granted summary judgment on the basis that the plaintiff, Raymond Holmes, failed to exhaust his administrative remedies prior to bringing his ERISA suit.  Holmes v. Folger Coffee Co., No. 05-1227, 2006 WL 5581721, at *10 (E.D. La. Aug. 25, 2006), *aff'd*, 228 F. App'x 377.  The district court concluded that Holmes failed to appeal within the 180-day deadline when his attorney sent his plan a letter stating that Holmes "'intend[ed] to pursue an appeal of the decision'" denying his benefits.  Id. at *2 (alteration in original).  In addition to indicating an intent to pursue an appeal, the letter further requested "a copy of Mr. Holmes' personnel file for the purpose of preparing such appeal."  Id.  According to the district court, "[i]n support of his argument" that he timely appealed, Holmes "generously classifie[d] the . . . letter sent to the Folgers Personnel Department as an appeal."  Id., at *9.  To the contrary, the court found that Holmes's letter "clearly indicated only an intent to pursue an appeal *sometime in the future* and in no way could be construed as constituting an actual appeal.  The stated

purpose of the letter was to request a copy of Plaintiff's personnel file for preparation of such intended appeal." Id. at *10 (emphasis added). The district court also noted a letter from the plan "instruct[ed] [Holmes] that if he wished to appeal the decision . . . he would have to follow Plan procedure." The court considered this an "explicit indication that the Plan did not consider the April 30th letter to be an appeal." Id. The court further observed that Holmes's attorney had "request[ed] an extension of the 180-day time limit for filing an appeal" even after Holmes's purported appeal letter was sent--thus evidencing that Holmes himself did not consider his earlier letter an appeal. Id.

Similar to Holmes, Plaintiff's August 2003 letter requested the materials necessary to evaluate Hartford's denial of benefits and to formulate an appeal. Specifically, Plaintiff requested:

> a copy of the contract and Summary Plan Description, including those in effect currently, the ones in effect at the time [Plaintiff] became disabled (1997), and all interim Plan amendments . . . the most recent annual report (Form 5500 Series), . . . copies of all pertinent documents relating to the decision to terminate [Plaintiff's] disability and health insurance benefits, . . . [to include but] not limited to the following:
>
> > a) A complete copy of [Plaintiff's] disability claim file including application or enrollment information, claims record, claim status, patient management records, all correspondence, medical reports and records, pertinent excerpts from claims manual, in-house memoranda, all reports and records from contracted sources whether relied upon or not, the identity of all consulting physicians,

9

> including those not rely [sic] upon in making any claims decisions, all other records used to determine [Plaintiff's] claim.
>
> b) A list of the names and financial relationships to the insurance company of all healthcare providers who had a role in evaluating claimant's claim.

Plaintiff requested receipt of "these documents within the 30-day period provided by law." Just as in Holmes, Plaintiff's August 25, 2003 letter stating her "notice of *intention* to appeal," "clearly indicated only *an intent to pursue an appeal some time in the future* and in no way could be construed as constituting an actual appeal." Holmes, 2006 WL 5581721, at *10 (emphasis added).

Not until Plaintiff sent to Defendant the 2007 appeal letter did Plaintiff present any reasons or arguments for reversing the 2003 decision to deny benefits. Thus, nothing was presented to Defendant for administrative *appellate* review in Plaintiff's August 25, 2003 letter. This fact is impliedly established by the letter itself, in which Plaintiff declares only an "intention to appeal" and states Plaintiff "will notify you in writing to proceed with [Plaintiff's] administrative appeal" *after* "we have had adequate time to review and supplement the record." The Plan requires that an appeal be processed "[n]o more than 45 days after we receive your appeal," absent special circumstances that may permit enlargement of the decision time to "no more than 90 days." Because Plaintiff's August 25, 2003 letter presented nothing for

10

administrative appellate decision, however, the time limits had no effect.[13]

---

[13] On the other hand, if Plaintiff's August 25, 2003 letter was an appeal, as Plaintiff contends, then Defendant at the maximum had "no more than 90 days" after September 2, 2003, when it received the "appeal" to process the appeal. The foregoing Plan provision for up to 90 days complies with 29 C.F.R. § 2560.503-1(i)(3). Thus, Defendant's "appeal" determination was required to be made by the ninetieth day after September 2, which was December 1, 2003. If a Plan fails to follow its prescribed claims procedure, in this instance by deciding the appeal within 90 days, "a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under § 502(a) of the Act." 29 C.F.R. § 2560.503-1(*1*). Accordingly, if Plaintiff's August 25, 2003 letter was an actual appeal, her cause of action for wrongful denial of ERISA benefits accrued December 2, 2003. *See* Nichols v. Prudential Ins. Co. of Am., 406 F.3d 98, 107 (2d Cir. 2005) (holding that the plaintiff's administrative claim to benefits was "deemed denied" under the older version of the regulation because no timely determination was made); Seger v. ReliaStar Life, No. 3:04 CV 16/RV/MD, 2005 WL 2249905, at *7 (N.D. Fla. Sept. 14, 2005) ("It has been clearly established that once the ERISA regulatory deadline expires, a claimant may bring a civil action to determine the merits of her claim." (citing Mass. Mut. Life Ins. Co. v. Russell, 105 S. Ct. 3085, 3091 (1985); Nichols, 406 F.3d 98)); *cf*. Galvan v. SBC Pension Benefit Plan, 204 F. App'x 335, 337-40 (5th Cir. 2006) (concluding that a plaintiff could not rely on 29 C.F.R. § 2560.503-1(*l*) to argue that she exhausted her administrative remedies where she filed an *amended complaint* after the plan-defendant failed to respond timely to her appeal because her *original complaint* was filed before the plan-defendant was required to respond to her appeal)).

Plaintiff did not file suit until January 17, 2008. If the August 25, 2003 letter was an appeal, then she filed suit more than four years after her cause of action for wrongful denial of benefits accrued on December 2, 2003, as a result of Defendant not having processed her appeal within 90 days after the appeal was received. Under Plaintiff's view that her August 25, 2003 letter was an appeal, therefore, her claim is barred by the four-year statute of limitations. *See* Harris Methodist Fort Worth v. Sales Support Servs., Inc. Employee Health Care Plan, 426 F.3d 330, 337 (5th Cir. 2005); TEX. CIV. PRAC. & REM. CODE, § 16.004(a).

Moreover, after Hartford received the August 25, 2003 letter, it not only made an entry in Plaintiff's claim file that an "intent to appeal letter" had been received, which was "not an appeal," but also within fewer than thirty days after receiving Plaintiff's letter, Hartford sent to Plaintiff's counsel the materials requested, including Plaintiff's actual claim file that contained the entry that Plaintiff's letter was "not an appeal." Still, Plaintiff did nothing to perfect an appeal in accordance with the Plan or to submit "written comments, documents, records and other information related to [her] claim." Thus, the 180-day period expired, and additional years rolled by, before Plaintiff finally filed an appeal letter, with statements and arguments, in February 2007. In short, Plaintiff did not appeal within the time limit prescribed by the Plan, of which Plaintiff had full notice, and Plaintiff thereby failed to exhaust her administrative remedies. Plaintiff's Section 502(a)(1)(B) claim for benefits must therefore be dismissed.

B.   <u>Estoppel</u>

Plaintiff, citing <u>Bourgeois</u>, contends that if she failed to exhaust her administrative remedies, Defendant should be estopped from relying on her failure because Hartford did not inform Plaintiff of any pending deadlines as requested in Plaintiff's

August 25th "intent to appeal" letter.[14]  In Bourgeois, the plaintiff, Bourgeois, sued his former employer's parent company and two of its benefits plans under ERISA, seeking enhanced pension benefits. Bourgeois, 215 F.3d at 477-78. Although Bourgeois spent substantial time engaged in "a series of conversations and correspondences" with various and high ranking company officials, including the senior human resources official and both the chairman of the board of his employer company and the chairman of the board of its parent company, he never submitted a written claim to the plans' benefits committee in accordance with the plans' claims procedures before filing a lawsuit under ERISA. Id. Accordingly, the district court granted summary judgment in favor of defendants on their affirmative defense of failure to exhaust administrative remedies. Id. at 479.

On appeal, the Fifth Circuit rejected Bourgeois's arguments that he should be excused from the exhaustion requirement because resorting to the administrative remedies outlined in the plans would have been futile and/or because the administrator's failure to provide him with complete plan information "forced him to waste years of time trying to resolve his claim" and left him without adequate information to pursue those administrative remedies. Id. at 479-81. The Court agreed, however, that "the lack of information and behavior of various officials of the company led

---

[14] Document No. 16 at 21-22 (citing Bourgeois, 215 F.3d 475).

Bourgeois on a wild goose chase, effectively extinguishing his time to apply for benefits," and the Court was therefore "inclined to estop the defendants from asserting certain defenses." Id. at 481-82. Because allowing "estoppel to prevent the defendants from asserting their failure to exhaust defense" would result in the case being remanded to the district court for a benefits determination--a disfavored result--the Court concluded that "the better course would be to refer the claim to the benefits committee for an initial benefits determination." Id. at 482. Thus, "while not ruling out the possibility that estoppel might allow a claimant to overcome a defense based on a failure to exhaust," the Fifth Circuit "instead merely estop[ped] the defendants from arguing that Bourgeois's claim [was] time-barred before the [benefits] Committee." Id.

Plaintiff's facts fall far short of those of the plaintiff in Bourgeois. Unlike Bourgeois, Plaintiff did receive notice of the requirements for an appeal in the April 4, 2003 letter. Unlike Bourgeois, Plaintiff was represented by legal counsel during her efforts to reinstate her denied benefits. Unlike Bourgeois's experience with the officials in his company, there is no evidence that Plaintiff was deliberately misled by Defendant or that her employer attempted to "string her along" until the time for filing a claim under the Policy expired. In short, the facts that warranted a limited estoppel in Bourgeois are not at all present in

14

this case.  Accordingly, Defendant is not estopped from asserting an exhaustion defense.[15]

## IV. Order

Accordingly, it is

ORDERED that Hearst Corporation Long Term Disability Plan's Motion for Summary Judgment (Document No. 13) is GRANTED and Plaintiff Debra Swanson's claims are hereby DISMISSED.

The Clerk shall notify all parties and provide them with a signed copy of this Order.

SIGNED at Houston, Texas, on this 11th day of February, 2009.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

---

[15] Plaintiff here asks that this Court estop Defendant's exhaustion defense *and then make the benefits determination*. This is the very kind of estoppel that the Fifth Circuit expressly refused to order in Bourgeois with the observation that "[s]uch court determinations are disfavored." Bourgeois, 215 F.3d at 482. Moreover, the parties have not cited and the Court has not found any case by any court after Bourgeois was decided that has employed the "disfavored" estoppel theory argued by Plaintiff.